UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHANISE BEARD,  )
RODERICK JACKSON, JR.  )
Plaintiffs,  )
v.  )  Case No.
  )
CITY OF DETROIT, AND  )
DAVID GONZALEZ  )
Defendants.  )

## COMPLAINT

Plaintiffs SHANISE BEARD and RODERICK JACKSON, JR ("Plaintiffs"), by and through their attorney, NK LAW, state the following for their Complaint against Defendant City of Detroit ("City") and David Gonzalez ("Defendant Gonzalez"):

1. This is a civil action arising under 42 U.S.C. § 1983 and common law avenues of recovery for deprivations of Plaintiffs' rights.

2. Plaintiffs sue the individual Defendant Gonzalez in his individual capacity.

## JURISDICTION

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1367(a) and § 1341.

## VENUE

4. Venue is proper under 28 U.S.C. § 1391(b).

5. At all times relevant herein, Plaintiffs resided in and were citizens of Detroit, Michigan.

6. Defendant City is a political subdivision of the State of Michigan acting under color of State law, and is a person for purposes of a 42 U.S.C. § 1983 action.

7. Defendant Gonzalez was at all relevant times a police officer (Badge #850) employed by Defendant City.

## COLOR OF STATE LAW

8. At all times relevant herein, Defendant Gonzalez acted under color of state law.

9. Particularly, Defendant Gonzalez acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Michigan, and its political subdivisions.

## FACTUAL BACKGROUND

10. On February 13, 2024, Plaintiffs owned three dogs named Jojo, Drama, and Nina.

11. On February 13, 2024, Plaintiffs and their three dogs resided at 19321 Hubbell Street, Detroit, MI 48235 (the "Residence") with their six-year-old son.

2

12.     On February 13, 2024, Defendant Gonzalez illegally shot Plaintiffs' dogs – Jojo and Drama – while they were contained in a metal chain link fence and gated backyard of Plaintiffs' Residence. Defendant Gonzalez killed Jojo and severely wounded Drama.

13.     Records and videos obtained in response to Plaintiff's Freedom of Information Act ("FOIA") request show that Defendant City's officers, Michael Dinnan, Daniel Colegrove, Defendant Gonzalez, Brandon Newman, and Trevor Dorsey at approximately 11:30 PM on February 13, 2024, were initiating a traffic stop on or near Hubbell Street in Detroit, MI related to a potentially stolen vehicle. During the traffic stop, a rear occupant of the vehicle, Jamar Jackson, fled the vehicle on foot. Jamar Jackson then ran towards Plaintiffs' Residence and jumped the chain link fence into the backyard of Plaintiffs' Residence. Plaintiffs' family dogs – Jojo, Drama, and Nina – were in the backyard at that time. Plaintiffs and their six-year-old son were inside the Residence.

14.     FOIA records further indicate that the officers chased Jamar Jackson on foot, including Defendant Gonzalez who followed on foot. It is clear from the body camera footage of Defendant Gonzalez that there are dogs barking the back yard of the Residence as he approaches it.

3

15. FOIA records further indicate that Officer Brandon Newman subsequently accessed the backyard of Plaintiffs' Residence by jumping the chain link fence on the South side of Plaintiffs' Residence. Officer Brandon Newman then jumped out of the backyard to avoid Plaintiffs' dogs in the back yard. Defendant Gonzalez then ran toward the fenced in back yard and – reaching over the fence – fired two shots into Plaintiff's backyard striking Jojo and Drama. Plaintiffs' dogs were shot by Defendant Gonzalez while he has outside of the fenced in yard and the dogs presented no imminent threat to him or anyone else.

16. The arrest report obtained by Plaintiffs' FOIA indicates that Jamar Jackson did not sustain any dog bites or injuries from Plaintiffs dogs. None of the videos produced by the City in response to Plaintiffs' FOIA show the dogs biting or harming any officers or anyone else for that matter.

17. The body camera footage produced in response to Plaintiffs' FOIA reveals, in fact, that, after Defendant Gonzalez shot Jojo and Drama, Defendant Gonzalez asked Officer Newman if "he [the dog] bite you?" Officer Newman responded, "No. I jumped back over the gate." Defendant Gonzalez then admitted to Officer Newman that "I got scared. I got scared for you, bro."

18. Plaintiffs were not charged with any crime and committed none.

4

19. It was not necessary, reasonable, or legal for Defendant Gonzalez to shoot Jojo or Drama because they were contained within the backyard of Plaintiffs' residence. Defendant Gonzalez shot the dogs by reaching over the fence after Officer Newman had already exited the fenced in backyard. Additionally, because Jamar Jackson was at the fence line when officers arrived at the backyard and within the officers' reach, the City's officers could simply have pulled Jamar Jackson out of Plaintiffs' backyard, outside of the fenced in area containing the dogs, which Officer Dinnan did in fact do after Defendant Gonzalez shot Plaintiffs' dogs.

20. Jojo died at Plaintiffs' Residence. Plaintiffs' rushed Drama to a veterinarian immediately after the shooting. Drama fortunately survived. However, she sustained serious injuries to her back legs from the gunshot wound, which affects her ability to walk.

21. At no time did City of Detroit police officers give Plaintiffs an opportunity to sequester the dogs to permit them to access the back yard.

22. Plaintiffs' dogs were all properly licensed at the time of the shooting.

# COUNT I
# VIOLATION OF CIVIL RIGHTS
# 42 U.S.C. § 1983 AND FOURTH AMENDMENT
# AGAINST THE INDIVIDUAL DEFENDANT
# FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES
# AND ATTORNEY'S FEES

23. Plaintiffs re-allege all of the preceding paragraphs.

24. The Fourth Amendment of the United States Constitution, U.S. Const. amend. IV, prohibits the government from unreasonably destroying or seizing a citizen's property.

25. "The destruction of property by state officials poses as much of a threat, if not more, to people's right to be 'secure . . . in their effects' as does the physical taking of them." *Fuller v. Vines*, 36 F.3d 65, 68 (9th Cir. 1994), overruled on other grounds, *Robinson v. Solano County*, 278 F.3d 1007, 1013 (9th Cir. 2002) (citation omitted).

26. "The killing of [a] dog is a destruction recognized as a seizure under the Fourth Amendment" and can constitute a cognizable claim under § 1983. *Id.*

27. Dogs are more than just a personal effect. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose,* 402 F.3d 962, 975 (9th Cir. 2005) (holding that defendant police's shooting of plaintiff's dogs was an unreasonable seizure in particular where defendant police officers had notice

6

of the dog's presence and were not surprised by them and had no plan to deal with the dog other than by shooting it).

28. The emotional attachment to a family's dog is not comparable to a possessory interest in furniture. *Id*.

29. Indeed, Plaintiffs' Fourth Amendment interests involved are substantial because "the bond between a dog owner and his pet can be strong and enduring," and Plaintiffs think of their three dogs "in terms of an emotional relationship, rather than a property relationship." *Altman v. City of High Point, N.C.*, 330 F.3d 194, 205 (4th Cir. 2003).

30. In circumstances where, as here, the dogs do not pose an imminent threat, or the officer is not surprised by the dog and has had time to make alternate plans to control the dog, other than shooting, the shooting of the dog has been found to be an unreasonable seizure. *Dziekan v. Gaynor*, 376 F. Supp. 2d 267, 270-71 (D. Conn. 2005). (citing cases and discussing *San Jose Charter of the Hells Angels Motorcycle Club*, 402 F.3d at 975).

31. Defendants' acts described herein were objectively unreasonable allowing for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."

7

*Graham v. Connor*, 490 U.S. 386, 396-97, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

32. Indeed, Defendants' acts described herein were intentional, grossly negligent, amounted to reckless or callous indifference to Plaintiffs' constitutional rights.

33. Defendants' shooting Plaintiffs' dogs, Jojo and Drama, and killing Jojo, was unreasonable under the totality of the circumstances and therefore constituted an unreasonable seizure under the Fourth Amendment because there was no exigency and police officers could have conducted their business without shooting Plaintiffs' two dogs.

34. Defendants shooting Plaintiffs' dogs, Jojo and Drama, and killing Jojo, was more intrusive than necessary. *Florida v. Royer*, 460 U.S. 491, 504 (1983) ("A seizure becomes unlawful when it is 'more intrusive than necessary").

35. No governmental interest justifies the intrusion involved in this case.

36. Defendant Gonzalez's shooting Plaintiffs' dogs, Jojo and Drama, and killing Jojo, was objectively unreasonable because Plaintiffs' three dogs were secured inside of Plaintiffs' back yard and Defendant Gonzalez and other officers could have pulled Jamar Jackson over the fence and outside of the

Plaintiffs back yard, or they simply waited for Jamar Jackson to exit Plaintiffs' backyard upon him encountering the dogs.

37. In other words, Defendant Gonzalez could have used less intrusive means if he reasonably believed his fellow officers or Jamar Jackson were in imminent danger, such as yelling at the dogs to leave the area, or by using a club, night stick, or pepper stray to direct the animals to a different area of the back yard.

38. Defendant Gonzalez (and indeed none of the police officers) were not in any immediate danger that would have justified the use of deadly force. *Fuller v. Vines*, 36 F.3d 65 (9th Cir. 1994).

## COMPENSATORY DAMAGES

39. Under 42 U.S.C. § 1983 Plaintiffs are entitled to an award of compensatory damages, including but not limited to economic loss, and mental anguish and suffering from the constitutional violation, against each individual Defendant in his individual capacity.

## PUNITIVE DAMAGES

40. The individual Defendant's actions were:

    a. Reckless;

    b. Showed callous indifference toward the rights of Plaintiff; and

9

   c. Were taken in the face of a perceived risk that the actions would violate federal law.

41. Plaintiffs are entitled to an award of punitive damages against the individual Defendant in his individual capacity in order to punish him and to deter others.

### ATTORNEY'S FEES

42. Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. § 1983 and 1988 against each individual Defendant in his individual capacity, for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiffs pray for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

### COUNT II
### VIOLATION OF CIVIL RIGHTS
### 42 U.S.C. § 1983 AND FOURTH AMENDMENT
### AGAINST DEFENDANT CITY
### FOR COMPENSATORY DAMAGES AND ATTORNEY'S FEES

43. Plaintiffs re-allege their prior allegations.

## COMPENSATORY DAMAGES
## 1ST ALTERNATIVE BASIS OF MUNICIPAL LIABILITY
## DELEGATION TO INDIVIDUAL DEFENDANT

44. As the first alternate basis for liability against Defendant City, the policy maker for Defendant City, the mayor, or someone else, and that person delegated full authority and/or empowered the individual Defendant's policy.

45. That delegation of authority by the actual policy maker of Defendant City placed the individual Defendant in a policy making position, and the acts of the individual Defendant may fairly be said to be those of the municipality. *Id*. at 483, and *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

46. Those acts therefore subject Defendant City to liability for the constitutional violations of the individual Defendant. *Id*. at 483; *Kujawski v. Board of Com'rs of Bartholomew County, Ind*., 183 F.3d 734, 737 (7th Cir. 1999).

## 2ND ALTERNATIVE BASIS OF MUNICIPAL LIABILITY – FAILURE TO TRAIN, SUPERVISE, CONTROL

47. As the second alternative basis for liability against Defendant City, Defendant City failed to properly hire, train, supervise, control and/or discipline the individual Defendants with respect to dogs such as Plaintiffs' dogs, who live throughout the City.

11

48. Defendant City was thus deliberately indifferent to the rights of others in adopting its hiring and training practices, and in failing to supervise, control and/or discipline each individual Defendant such that those failures reflected a deliberate or conscious choice by Defendant City made from among various alternatives. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

49. Those deficiencies were the moving force that caused Plaintiffs' damages. *Larson By Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996).

50. In light of the fact that it was each individual Defendant who engaged in the constitutional violations (and numerous other City of Detroit police officers who needlessly and unconstitutionally killed citizens' dogs), the need to correct the deficiencies is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of Defendant City can reasonably be said to have been deliberately indifferent to the need. *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996).

51. If Defendant City had properly hired, trained, supervised, controlled and/or disciplined the individual Defendant, the constitutional violations committed by the individual Defendant committed would not have occurred.

52. These failures by Defendant City to hire, train, supervise, control and/or discipline the individual Defendants subject Defendant City to liability for the constitutional violations committed by the individual Defendant.

53. On information and belief, Defendant City had no policy or training in place in how to handle encounters with dogs secured inside of a locked chain link fence, which was evident in Defendants' actions alleged herein.

54. Such training was at all relevant times available online at no cost to Defendant City.

55. Defendant City has repeatedly been sued for unconstitutional shootings of dogs, yet has done nothing to address the problem that is well known to the City and has been widely covered in local, national and international media.

56. On information and belief, the City has never independently determined that one of its police officers improperly shot any dog.

### COMPENSATORY DAMAGES

57. Under 42 U.S.C. § 1983 Plaintiffs are entitled to an award of compensatory damages, including but not limited to economic loss, and mental anguish and suffering from the constitutional violation, against Defendant City.

## ATTORNEY'S FEES

58. Under 42 U.S.C. § 1988 if Plaintiffs are the prevailing party in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs pray for judgment under 42 U.S.C. § 1983 and 1988 against Defendant City for compensatory damages in a fair and reasonable amount, for reasonable attorney's fees, and non-taxable expenses, for costs and such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 1983.

          Respectfully submitted,

          NK LAW

          BY  /s/  Nicholas Kyriakopoulos
          NICHOLAS KYRIAKOPOULOS (P76442)
          Attorney for Plaintiffs
          4190 Telegraph Road, Suite 1000
          Bloomfield Hills, MI 48302
          P: (248) 723-4747
          F: (248) 723-4690
          E: nick@nklawmi.com

Dated: August 7, 2025

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Respectfully submitted,

NK LAW

BY /s/ Nicholas Kyriakopoulos
NICHOLAS KYRIAKOPOULOS (P76442)
Attorney for Plaintiffs
4190 Telegraph Road, Suite 1000
Bloomfield Hills, MI 48302
P: (248) 723-4747
F: (248) 723-4690
E: nick@nklawmi.com

Dated: August 7, 2025